UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| TYRICE POTTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 19-1256-JDT-cgc |
| | ) | |
| SHAWN PHILLIPS, ET AL., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER TO MODIFY THE DOCKET, DISMISSING COMPLAINT,
AND GRANTING LEAVE TO AMEND

On November 4, 2019, Plaintiff Tyrice Potter, Tennessee Department of Correction (TDOC) prisoner number 531709, who is incarcerated at the West Tennessee State Penitentiary (WTSP) in Henning, Tennessee, filed a *pro se* complaint under 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis.* (ECF Nos. 1 & 2.) On November 5, 2019, the Court granted Potter leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The complaint concerns events that occurred at the Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee, where Potter previously was incarcerated.

In the section of the complaint labeled "Parties," Potter lists only three Defendants: Shawn Phillips, former NWCX Warden; David B. Abel, NWCX investigator; and NWCX Sgt. First Name Unknown (FNU) Page. (ECF No. 1 at PageID 1-2.) However, in other sections of his pleading, Potter names several more Defendants. (*See id.* at PageID 3; ECF No. 1-1 at PageID 27.) The Clerk is directed MODIFY the docket to add these additional Defendants: TDOC Commissioner

Tony Parker; Tennessee Governor William Byron Lee; WTSP Warden FNU Lebo; WTSP Sgt. K. Parker, Grievance Chairperson; and WTSP Lt. FNU Hudle. The Defendants are sued in their individual and official capacities. (ECF No. 1 at PageID 13.)

The complaint alleges that Potter was the victim in a homemade knife attack among inmates at NWCX on January 27, 2019. (*Id*. at PageID 2-4, 24; *see also* ECF No. 1-3 at PageID 47.) After the attack, Potter was taken to the NWCX's medical department and then to Dyersburg Hospital. (ECF No. 1 at PageID 2-4.) He contends that he received inadequate medical care at NWCX because he waited 45-60 minutes for care. (*Id*. at PageID 4-5.) He also states that prison personnel failed to follow proper TDOC policy during the investigation of the incident. (*Id*. at PageID 6-8.) Potter further alleges that NWCX personnel issued "false" disciplinary reports against him, (*id*. at PageID 5-6, 10-11), retaliated against him, (*id*. at PageID 17, 19), and conspired against him, (*id*. at PageID 10, 15). He contends NWCX wrongfully transferred him to close custody in WTSP's Security Management Unit (SMU) program because of the incident. (*Id*. at PageID 15, 18.)

Potter's 26-page handwritten complaint is difficult to decipher because of its disjointed and rambling narrative. The Court construes it to allege claims for: (1) denial of adequate medical care at the NWCX, (*e.g.*, ECF No. 1 at PageID 9, 13-14, 24-25); (2) Defendants' failure to adhere to TDOC policy governing investigation of the attack, (*e.g.*, *id*. at PageID 7); (3) conducting a "forced" disciplinary hearing, (*e.g.*, *id*. at PageID 10); (4) issuance of false disciplinary reports against him and conducting a "false" disciplinary board hearing, (*e.g.*, *id*. at PageID 5-6, 10-11, 15); (5) deprivation of his right to file and appeal a grievance about the events surrounding the attack, (*e.g.*, *id*. at PageID 16-19); (6) conspiracy among the Defendants to harm Potter, (*e.g.*, *id*. at PageID 10-11, 15-16); (7) Defendants' retaliation against Potter because of the incident, (*e.g.*,

*id.* at PageID 17, 19); (8) unsafe conditions based on failure to protect Potter, (*e.g.*, *id.* at PageID 9, 13-14, 24-25); and (9) wrongful transfer of Potter into close custody at the WTSP, (*e.g.*, *id.* at PageID 15, 18.)

With respect to injuries, Potter contends that he bled profusely following the Incident and that he received stitches in his hand at the hospital, but he does not claim any ongoing physical injuries or pain. (*See*, *e.g.*, ECF No. 1 at PageID 4.) He seeks both compensatory and punitive damages. (*See*, *e.g.*, *id.* at PageID 12-13, 15-16, 18-19.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make

a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Potter filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

As an initial matter, to the extent that Potter sues Defendants in both their official and individual capacities (*see*, *e.g.*, ECF No. 1 at PageID 13 ("Plaintiff … claims on behalf of supervisory liability")), the official capacity claims are treated as claims against Tennessee because all of the Defendants were, at the relevant time, employed by the State of Tennessee. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Potter, however, does not state a valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution

4

provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity and therefore may not be sued for damages. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

In addition, Governor Lee, Commissioner Parker, and Wardens Phillips and Lebo appear to be sued only due to their positions. Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A supervisory official who is aware of the unconstitutional

5

conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996).  Therefore, to the extent Lewis's claims against the supervisory Defendants are based on the supposed failure to oversee and monitor the behavior of their subordinates to ensure compliance with all applicable policies, procedures, and regulations or on the negligent failure to correct the unconstitutional actions of those subordinates, those supervisory contentions fail to state a claim.

*Inadequate Medical Care*:  Potter alleges he received inadequate medical care because the nurses in the NWCX medical department did not treat his injured hand, which was bleeding profusely, during the 45-60 minutes that elapsed before he was taken to the hospital; he alleges this waiting period was too long.  (ECF No. 1 at PageID 3-4, 9, 24.)  However, Potter does not actually sue any NWCX medical provider.

The Court reviews claims regarding the denial of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain" . . . proscribed by the Eighth Amendment."  However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.  That is, an Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298.  The

objective component requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The subjective component requires that prison officials acted with the requisite intent, *i.e.*, a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03 (plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

Potter's allegations about his purportedly prolonged wait-time in the medical department amount merely to a disagreement about treatment. His opinion that medical staff should have triaged him ahead of other patients and treated his injury sooner – or, as he seems to suggest, immediately – does not suffice to allege a constitutional deprivation. Disagreement about the course of treatment does not present a proper claim under § 1983. *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In fact, his concession that he sat and

waited "*with* numbers [sic] of strike force for 45 minutes to 60 minutes," (ECF No. 1 at PageID 9 (emphasis added)), seems to belie his suggestion that Defendants spitefully made him wait.

Moreover, Potter does not allege that his injury was exacerbated by any treatment or lack thereof while he waited at the NWCX before being taken to the hospital; rather, he complains only that he waited too long. While his injury would certainly seem to qualify as a serious medical need, he has not demonstrated that any named Defendant had a "sufficiently culpable state of mind" and acted with "deliberate indifference" as to his pre-care wait-time. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302-03. Quite to the contrary, NWCX personnel took him to Dyersburg Hospital. (ECF No. 1 at PageID 3-4, 9 & 24.) Accordingly, Potter fails to state a claim for constitutionally inadequate medical care.

Before turning to his next claim, the Court notes Potter's suggestion of some inappropriate comments that Defendants made to him during wait in the medical department. (*See*, *e.g.*, ECF No. 1 at PageID 4 ("D[uring] the time of Plaintiff bleeding non-stop[,] the strike force Mr. Abel had talk[ed] real nasty towards Plaintiff saying we should let your [expletive] bleed out [expletive] and see you die (or) we pray u never could use that (left) hand no more on this earth as long as you got air in your body. We hate you [expletive] on our compound").) However, harassment and verbal abuse, no matter how "shameful and utterly unprofessional," do not violate the Eighth Amendment. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545–46 (6th Cir. 2004) (affirming dismissal for failure to state a claim where plaintiff's allegations included continuous insulting remarks by guard); *see also Morrison v. Greenwald*, No. 3:09-CV-009, 2010 WL 1253962, at *9 (S.D. Ohio Feb. 24, 2010) report and recommendation adopted, No. 3-:09-CV-009, 2010 WL 1253958 (S.D. Ohio Mar. 23, 2010) ("The Constitution does not protect inmates (or anyone else) from gross insults by public officials, including prison guards. Furthermore, Plaintiff suffered no

8

injury from the insult."). Even a guard's verbal threat of assault does not violate a prisoner's constitutional rights. *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004). Just as the Constitution "does not mandate comfortable prisons," *Wilson,* 501 U.S. at 298, it does not mandate polite prison guards or officials. "Derogatory or abusive language and conduct do not give rise to a claim under § 1983." *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn. 1994) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). Accordingly, Potter's allegations of verbal insults do not state a claim under § 1983.

<u>*TDOC policy as to Incident investigation*</u>: Potter claims that Defendants failed to follow TDOC policy governing investigation of the attack. Specifically, Potter alleges that the incident occurred on January 27, 2019, but Defendant Abel's report was dated February 1, 2019; Defendants therefore allegedly violated a TDOC policy that requires incident investigations to be "initiated within 24 hours and completed without unreasonable delay." (ECF No. 1 at PageID 6-8.)[1] He does not identify any particular losses stemming from the four to five day purported delay in starting an investigation. (*Id.*)

An inmate's allegation that prison officials failed to follow TDOC administrative policies does not, in and of itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007). After *Sandin v. Conner*, 515 U.S. 472, 484 (1995), it is even clearer that mandatory language in prison regulations does not create a liberty interest protected by the

---

[1] Potter attaches to his complaint a copy of: (1) TDOC Policy 502.01(G)(3) ("When an alleged rule violation is reported, an appropriate investigation should be initiated within 24 hours of the time the violation is reported and should be completed without unreasonable delay"). (ECF No. 1-3 at PageID 44); and (2) a TDOC Disciplinary Report dated February 1, 2019, regarding an assault with a deadly weapon that occurred on January 27, 2019, and involved inmates Terry Lewis, Tyrice Potter, Corey Thompson, Daniel Booker, and Harold Blair. (ECF No. 1-3 at PageID 46-48.)

Due Process Clause. *See Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 729-30 (W.D. Tenn.), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-71 (6th Cir. 1995)). Section 1983 does not provide a remedy for violations of state laws or regulations. *Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate."). *See also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (the violation of a prison regulation is not actionable under § 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)). Accordingly, Potter does not have a constitutional right to NWCX's observance of any particular TDOC policy with respect to Incident investigation. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)) ("There is no statutory or common law right, much less a constitutional right, to an investigation."). This claim does not afford a basis of relief to Potter.

*"Forced" disciplinary hearing*: Potter claims that he was "unlawfully force[d] to have a d[isciplinary]-board hearing with Defendant Abel [and] D-Board Sgt. Page" after Potter was returned to NWCX's main compound on May 12, 2019. (ECF No. 1 at PageID 10; *see also id*. at PageID 15.) He seems to suggest that he was compelled to participate in a hearing against his will. But he does not identify what, if any, injuries, losses, or deprivations he suffered because the hearing occurred.

Even liberally construing Potter's statements about a "forced" hearing, a prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions

imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. *See also Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974) (prisoners have no right not to be charged with or convicted of prison disciplinary offenses). Potter fails to identify *any* hardship, let alone an atypical and significant one, due to the disciplinary hearing's occurrence. He therefore fails to state a claim for relief.

*False disciplinary reports and a "false" hearing*: Potter alleges that Defendants issued false disciplinary reports against him[2] and held a "false" disciplinary hearing in connection with the attack. He claims that when he returned to NWCX from the Dyersburg Hospital, prison officials "falsely wrote [him] up" for assault with a weapon. (ECF No. 1 at PageID 5-6.) Potter contends that Abel also "file[d] … a second false [report]" based on mistake. (*Id*. at PageID 10-11.) These contentions are not sufficient to allege a constitutional violation.

A prisoner does not have a due process right to be free of false disciplinary charges. *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) (unpublished)). While a prisoner has a due-process right to call witnesses on his behalf at a hearing, *Edwards v. Balisok*, 520 U.S. 641, 647 (1997), prisoners have no right to not to be charged

---

[2] Potter alleges the disciplinary reports were false because they identified him as a perpetrator in the attack, whereas Potter claims he was the targeted "victim." (*See* ECF No. 1 at PageID 2, 5-6.) Potter's exhibits, however, call into question that contention. For example, the TDOC Disciplinary Report attached to the complaint states: "On January 27, 2019 at 7:22 p.m., inmate Terry Lewis receiv[ed] stab wounds across his abdomen, chest area, and neck area. It was determined that inmates Tyrice Potter, Corey Thompson, Daniel Booker, and Harold Blair did go into No. 8 Cell 46 and assault inmate Lewis with a homemade knife, which required Lewis to be transported out for medical treatment. Therefore, inmates Potter, Booker, Thompson, and Blair are being charged with assault with [a] weapon." (ECF No. 1-3 at PageID 47.) The Court makes no factual findings on this issue, but merely makes note of it to show full consideration of the record before the Court.

11

with or convicted of prison disciplinary offenses, *see Wolff*, 418 U.S. at 564-71.  For these reasons, Potter does not state a claim for relief as to "false" disciplinary reports and hearing.

<u>*Grievance process*</u>:  Potter alleges deprivation of his rights to appeal his grievance and violation of his First Amendment rights in connection with his grievance stemming from the incident.  (ECF No. 1 at PageID 18 ("Plaintiff was deprived of his right to seek appeal") & PageID16-17 ("[Plaintiff] did file his emergency grievance [but Defendants] . . . violated Plaintiff['s] First Amendment right to freedom of speech").)  (*See also* ECF No. 1-3 at PageID 58-61 (October 7, 2019, TDOC Inappropriate Grievance Notification to Potter).)  He does not allege any arbitrary denial of access to NWCX's grievance procedure.

Moreover, prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim" because there is no inherent constitutional right to an effective prison grievance procedure.").  Even if a grievance system was constitutionally guaranteed, Potter has not shown how any particular Defendant's conduct with respect to the grievance process directly affected his "ability to bring his claim before any court."  *See Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x 866, 874-875 (6th Cir. 2011) (citation omitted).  Prisoners have a First Amendment right to file a grievance against prison officials, but they have no similar right to an investigation of their allegations.  *See Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003).  Furthermore, a failure to take corrective action in response to an inmate grievance does not supply the necessary personal involvement for § 1983 liability.  *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint

does not cause or contribute to the [constitutional] violation."). Potter's contentions regarding his incident-related grievances, both as to grievance appeal rights and First Amendment rights, fail to state a claim for relief.

*Conspiracy*: Potter alleges a conspiracy among the Defendants to injure him in relation to the January 2019 incident. He states:

> [E]ach defendant did co-party within an agreement between the (2) as each person's to injure plaintiff due by unlawfuly [sic] action under false file document entrey [sic] . . . There was (an) clear abuse of a meeting of the mind'(s) [sic] . . . .
>
> . . . .
>
> . . . As civil conspiracy which explained by the Sixth Circuit is an agreement between two or more person[s] to injure another by unlawfully action.

(ECF No. 1 at PageID 10-11, 15.) Potter neither specifically describes what Defendants' purported conspiracy was nor identifies any injuries causally related to it.

A plaintiff may plead a conspiracy claim under § 1983, but he must do so with specificity. *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). "[V]ague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). This pleading standard for a claim of civil conspiracy is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "To prevail on such a claim, a plaintiff must show that there is 'an agreement between two or more persons to injure another by unlawful action.'" *Sango v. Place*, No. 16-2095, 2016 WL 9413659, at *2 (6th Cir. Dec. 21, 2016) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)). The plaintiff must show "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Id.* (quoting *Robertson*, 753 F.3d at 622).

Here, Potter's vague, non-specific, and unsupported suggestions of a conspiracy among the Defendants to injure him in connection with the incident in question fail to meet these constitutional pleading requisites.

*Retaliation*: Potter seems to allege that one or more Defendants unlawfully retaliated against him for filing grievances related to the attack. (*E.g.*, ECF No. 1 at PageID 17 (using the phrase "filed the misconduct report against him in retaliation for his earlier grievance") & PageID 19 (using the phrase "due to state a claim alleging retaliation for exercising a constitutional right").) However, his contentions are vague and non-specific.

The Court reviews prisoner retaliation claims under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution."). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Filing a grievance is protected conduct. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

To the extent Potter seeks to pursue a claim of retaliation, he offers no short and plain statement of facts giving rise to his own claim of retaliation. Instead, his efforts appear to be merely a quotation of language from the Sixth Circuit's opinion in *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007). Plaintiff states that he "avers he's within the same. See Thomas v. Edy [sic] as above of a First Amendment retaliation claim. Thomas said complaint alleges that Defendant Edy [sic] filed the misconduct report against him in retaliation for his earlier grievance against another corrections officer." (ECF No. 1 at PageID 17); *see also Thomas*, 481 F.3d at 437 ("Thomas's complaint alleges that Eby filed the misconduct report against him in retaliation for his earlier grievance against another corrections officer. According to Thomas, Eby's retaliation violated his First Amendment rights, and accordingly is actionable under 42 U.S.C. § 1983.").) Potter vaguely refers, albeit generally, to his First Amendment constitutional right to file grievances. (ECF No. 1 at PageID 17, 19.) But he does not identify a causal connection between his filing of grievances related to the January 2019 attack and any adverse action taken against him as a result of those grievances. For these reasons, Potter fails to state a retaliation claim.

*Failure to protect*: Potter states that "it is cruel and unusual punishment to hold convicted criminals in unsafe conditions. It must be unconstitutional to confine the involuntarily committed – who may not be punished at all in unsafe conditions." (*Id.* at PageID 24-25.) The Court construes his "unsafe conditions" contention as a claim that Defendants failed to protect him in relation to the attack.[3]

This allegation that the Defendants failed to protect Potter amounts to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual

---

[3] Potter's "unsafe conditions" statement does not refer to issues such as adequacy of food, water, sanitation, or heat. (*See* ECF No. 1 at PageID 24-25.)

15

punishments. *See Estelle*, 429 U.S. at 104; *Farmer*, 511 U.S. at 832-33 (quotations omitted) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners"). "[N]ot all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998).

To state a claim under the Eighth Amendment, a plaintiff must satisfy an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). That is, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent; that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297 & 302-03. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837-38. In the context of a failure-to-protect claim, a prison officer will not be held liable without a showing that he or she "should have been aware of the reasonable likelihood of a potential attack and intervened earlier." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003).

"[A] correctional officer who observes an unlawful beating may . . . be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). However, the facts alleged must show that the officers "provid[ed] an opportunity for the attack and d[id] nothing" or remained "idly by while a known attack took place without intervening." *Carico*, 68 F. App'x at 639.

Potter does not allege that the general conditions at the NWCX posed a substantial risk of the attack occurring and inflicting serious harm on him. Nor has he alleged that any of the named Defendants knew of and disregarded an excessive risk to his or other inmates' health or safety. He does not claim that any of the Defendants should have been aware of the reasonable likelihood of injury to him from the incident and intervened earlier to prevent it. Potter also does not allege that any NWCX personnel provided an opportunity for the attack to occur and did nothing, or that they remained idly by while the incident took place. In fact, his own allegations suggests otherwise. (*See* ECF No. 1-3 at PageID 50 ("Inmate Tommy Johnson stood guard outside of the cell door during the assault").)

For these reasons, Potter fails to state a cognizable claim for failure to protect.

*Transfer to a different correctional facility and placement in close custody*: Finally, Potter argues that he was unlawfully forced into close custody and sent to WTSP's SMU program because of NWCX's false disciplinary reports against him. (ECF No. 1 at PageID 15, 18 ("Plaintiff was unlawfully force[d] on close custody and later sent to [WTSP] on SMU Program due to the above Defendants['] action(s) due to false-file . . . disciplinary report . . . Plaintiff is being unlawfully held on SMU housement [sic]").)

The Court affords Potter a liberal construction of his suggestion that he was wrongfully transferred to the WTSP and also mis-classified him as close custody. Nevertheless, his suggestions do not state a basis for relief because claims challenging classification procedures have no constitutional merit. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004); *Simpson v. Johnson*, 770 F.2d 167, *1 (6th Cir. 1985) (unpublished). The Court does not have the authority to supervise classification and housing assignment of inmates. An inmate does not have a protected right to be assigned to a

17

particular prison, security classification, or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976); *Sandin*, 515 U.S. at 484-87. Because "maintaining security, order, and discipline are essential goals of a corrections system," prison officials are given wide latitude in the adoption and application of prison policies, and courts have deferred to judgments of prison officials in upholding these regulations." *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011). Therefore, Potter fails to state a claim for relief.

*Opportunity to amend complaint*: The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that Potter should be given the opportunity to amend his complaint.

*Conclusion*: The Court DISMISSES Potter's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend, however, is GRANTED. Any amendment must be filed within twenty-one days after the date of this order, on or before **June 25, 2020**.

Potter is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The text of the complaint must allege

sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Potter fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

                                                  s/ **James D. Todd**
                                                  JAMES D. TODD
                                                  UNITED STATES DISTRICT JUDGE