UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TYRICE POTTER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   No. 19-1256-SHM-cgc |
| | ) |
| SHAWN PHILLIPS, ET AL., | ) |
| | ) |
|     Defendants. | ) |

**ORDER DISMISSING THE CONSOLIDATED AMENDED COMPLAINT WITH PREJUDICE (ECF NOS. 12 & 13);
DENYING LEAVE TO AMEND;
DENYING ALL PENDING MOTIONS (ECF NOS. 15, 16 & 17);
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH;
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL;
NOTIFYING POTTER OF STRIKE RECOMMENDATION UNDER 28 U.S.C. § 1915(g);
AND DISMISSING CASE IN ITS ENTIRETY**

On November 4, 2019, Plaintiff Tyrice Potter, who is incarcerated at the Morgan County Correctional Complex (the "MCCC") in Wartburg, Tennessee[1], filed a *pro se* complaint under 42

---

[1] When Potter filed his initial § 1983 complaint, he was confined at West Tennessee State Penitentiary (the "WTSP") in Henning, Tennessee. (ECF No. 1-4 at PageID 62.) In the November 5, 2019 order granting leave to proceed *in forma pauperis*, the Court instructed Potter that he must "notify the Court immediately, in writing, of change of address." (ECF No. 4 at PageID 78.) According to the latest information on the Tennessee Department of Correction Felony Offender Information website, Potter is presently confined at the MCCC. (*See* https://apps.tn.gov/foil/details.jsp; *see also* ECF No. 13 at PageID 132.) Potter has never notified the Clerk of Court in writing of Potter's facility transfer. Potter's failure to comply with the November 5, 2019 order justifies dismissal of this case. *See* Federal Rule of Civil Procedure 41(b) (giving federal courts the authority to dismiss a case for "failure of the plaintiff to prosecute or to comply with these rules or any order of the court"); *see also Nye Capital Appreciation Partners, L.L.C. v. Nemchik*, 483 F. App'x 1, 9 (6th Cir. 2012). In the interest of finality, Court will consider Potter's consolidated amended complaint and his three pending motions.

U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On November 5, 2019, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq*. (the "PLRA"). (ECF No. 4.) The complaint's claims arose from events at the Northwest Correctional Complex (the "NWCX") in Tiptonville, Tennessee, where Potter was then incarcerated. On June 4, 2020, the Court dismissed the complaint for failure to state a claim to relief and granted leave to amend within twenty-one days. (ECF No. 5 (the "Screening Order").) On June 19, 2020, the Court granted Potter's motion for extension of time to amend and set July 9, 2020, as Potter's deadline. (ECF No. 7.) On July 14, 2020, the Court granted Potter's second motion for extension of time to amend and set July 31, 2020, as Potter's deadline. (ECF No. 9.) On August 3, 2020, Potter filed an amended complaint. (ECF No. 12 (the "FAC") (dated July 27, 2020, and bearing a July 29, 2020 postage-date (ECF No. 12 at PageID 122 and ECF No. 12-1 at PageID 123).) On August 4, 2020, Potter filed another amended complaint that differs from the FAC only as to the notary public's signature on the last page. (ECF No. 13 at PageID 134 (the "SAC"); *cf*. ECF No. 12 at PageID 122.) The FAC and the SAC are consolidated and will be screened as a consolidated pleading for purposes of the PLRA. (ECF Nos. 12 & 13 (the "Consolidated Amended Complaint" or the "CAC").)

The CAC arises from the same events as the initial complaint. Potter was the victim in a homemade knife attack among inmates at NWCX on January 27, 2019 (the "Incident"). (ECF No. 13 at PageID 127; ECF No. 1 at PageID 2-4, 24; ECF No. 1-3 at PageID 47.) After the Incident, Potter was taken to the NWCX's medical department and then to Dyersburg Hospital (the "Transport"). (ECF No. 13 at PageID 127-28; ECF No. 1 at PageID 2-4.) Potter alleges inadequate medical care at the NWCX because the Defendants "orchestrated a delay" so that Potter "was not

2

immediately take for medical evaluation." (ECF No. 13 at PageID 128; ECF No. 1 at PageID 4-5.) Potter alleges that he bled profusely after the Incident and that he received hand stitches at the hospital. Potter does not claim any ongoing physical injuries or pain. (ECF No. 13 at PageID 128-29; ECF No. 1 at PageID 4.)

Like the initial complaint, the CAC alleges claims for: (1) inadequate medical care (ECF No. 13 at PageID 128-29; ECF No. 1 at PageID 9, 13-14 & 24-25); (2) "false" disciplinary reports and "forced … participat[ion] in a disciplinary hearing" (ECF No. 13 at PageID 129 & 131; ECF No. 1 at PageID 5-6, 10-11 & 15); (3) retaliation (ECF No. 13 at PageID 131; ECF No. 1 at PageID 17 & 19); (4) inappropriate verbal comments (ECF No. 13 at PageID 129; ECF No. 1 at PageID 4); (5) failure to protect (ECF No. 13 at PageID 131; ECF No. 1 at PageID 9, 13-14, 24-25); and (6) inadequate prison grievance process (ECF No. 13 at PageID 131-32; ECF No. 1 at PageID 16-19)[2] (claims (1) through (6) referred to as the "Original Claims"). The CAC asserts a conspiracy claim under 42 U.S.C. § 1985, *see* ECF No. 13 at PageID 126 (the "§ 1985 Claim"), rather than under § 1983, as alleged in the initial complaint, *see* ECF No. 1 at PageID 10-11 & 15-16.

As in the initial complaint, the CAC sues: (1) Shawn Phillips; (2) David Abel; (3) Sgt. F/N/U Page; (4) Sgt. F/N/U Parker; and (5) Lt. F/N/U Hudle. (ECF No. 13 at PageID 125.)[3]

---

[2] The CAC omits the initial complaint's claim for failure to follow TDOC policy in the investigation of the Incident. (*See* ECF No. 13; *cf.* ECF No. 1 at PageID 7.)

[3] The CAC does not sue (1) TDOC Commissioner Tony Parker, (2) Tennessee Governor William Byron Lee, or (3) WTSP Warden Lebo, who were sued in the initial complaint. (*See* ECF No. 13 at PageID 125; *cf.* ECF No. 5 at PageID 79-80.)

The CAC seeks: (1) service of process on the Defendants; (2) a jury trial; (3) leave to proceed *in forma pauperis*;[4] and (4) "all relief, general, specific or otherwise to which [Potter] may be entitled." (*Id*. at PageID 133.)[5]

On May 13, 2021, Potter filed: (1) a motion authorizing TDOC Commissioner Tony Parker to release Potter's "health records and substance use diagnosis treatment" (ECF No. 15 at PageID 140); and (2) a request for Abel to produce documents (ECF No. 16). On May 17, 2021, Potter filed a motion seeking a refund to Potter's MCCC inmate trust account and an order compelling the MCCC's trust fund account clerk "to quit deducting [my] incoming money." (ECF No. 17 at PageID 178) (collectively, the "Pending Motions").

Before the Court are Potter's Consolidated Amended Complaint (ECF Nos. 12 & 13) and the Pending Motions (ECF Nos. 15, 16 & 17). For the reasons explained below, the Consolidated Amended Complaint is DISMISSED WITH PREJUDICE and the Pending Motions are DENIED as moot.

**I.  ANALYSIS** [6]

The CAC restates on nine typewritten pages the initial complaint's twenty-six-page handwritten narrative. Nothing in the CAC: (1) alters the Screening Order's analyses of Potter's Original Claims or (2) states a claim to relief under § 1985.

**A.  The Original Claims**

---

[4] The Court granted leave to proceed *in forma pauperis* on November 5, 2019. (ECF No. 4.)

[5] The initial complaint sought compensatory and punitive damages. (ECF No. 1 at PageID 12-13, 15-16, 18-19.)

[6] The legal standard for screening prisoner claims under the PLRA and the requirements to state a claim under § 1983 were set forth in the Screening Order and need not be restated here. (*See* ECF No. 5 at PageID 81-82.)

1. As to Potter's inadequate medical care claim, the Screening Order concluded that "Potter's allegations about his purportedly prolonged wait-time in the medical department amount merely to a disagreement about treatment. His opinion that medical staff should have triaged him ahead of other patients and treated his injury sooner … does not suffice to allege a constitutional deprivation." (ECF No. 5 at PageID 85 (internal citations omitted).)

The CAC repeats the substance of Potter's initial medical care claim. The CAC alleges only that: "Plaintiff was not immediately taken for medical evaluation at a hospital [after the Incident]. The Defendants orchestrated a delay in the Plaintiff being taken to the hospital for treatment. The Defendants held Plaintiff in a holding area while Plaintiff bled profusely." (ECF No. 13 at PageID 128.)

The CAC alleges no new or different facts that alter the Screening Order's conclusion about Potter's inadequate-medical-care claim. The CAC does not allege that Potter's injury from the Incident was exacerbated by any delay in treatment at the NWCX before the Transport. The CAC does not allege facts demonstrating that any named Defendant had a "sufficiently culpable state of mind" and acted with "deliberate indifference" to Potter's wait-time. For these reasons, the CAC's inadequate-medical-care allegations fail to state a claim to relief, and that claim is DISMISSED WITH PREJUDICE.

2. As to Potter's claim of "false" disciplinary reports and "forced" disciplinary hearing, the Screening Order explained that: (a) prisoners have no due process right not to be charged with or convicted of prison disciplinary offenses (ECF No. 5 at PageID 89-90) (internal citations omitted)); and (b) a prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." (*Id*. at PageID 88-90) (internal citations omitted).

The CAC repeats the substance of Potter's initial medical care claim.  The CAC alleges only that: "Defendant Abel engaged in creating a false government report by knowingly falsifying a disciplinary report which stated that I was the attacker and misidentifying the name of the person taken to the hospital for medical treatment.  Despite this error, Defendant[s] Abel and Page forced Plaintiff to participate in a disciplinary hearing." (ECF No. 13 at PageID 129; *see also id*. at PageID 131 ("Plaintiff was the target of governmental documents that were knowingly falsified by Abel, Parker, and Hudle").)  These allegations are not sufficient to allege a constitutional violation.

The CAC alleges no new or different facts that alter the Screening Order's conclusion about Potter's claim of false disciplinary report and forced hearing.  The CAC does not cite any intervening changes in constitutional law, after entry of the Screening Order, about prisoners' rights as to disciplinary charges and hearings. (*See* ECF No. 5 at PageID 88-90 (citing *Edwards v. Balisok*, 520 U.S. 641, 647 (1997); *Sandin v. Conner*, 515 U.S. 472 (1995); *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974); *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999).)  The CAC does not identify what, if any, injuries, losses, or deprivations Potter suffered because there was "a disciplinary hearing." (*See* ECF No. 13 at PageID 129.)  The CAC fails to identify *any* hardship, let alone an atypical and significant one, because of the alleged disciplinary hearing.  For these reasons, the CAC's allegations about Potter's post-Incident "false" disciplinary charges and "forced" disciplinary hearing fail to state a claim to relief, and his claim is DISMISSED WITH PREJUDICE.

6

3. As to Potter's retaliation claim, the Screening Order concluded that Potter "offer[ed] no short and plain statement of facts giving rise to his claim of retaliation." (ECF No. 93.)

The CAC repeats the vague and non-specific character of the initial complaint's retaliation claim. The CAC alleges only that Potter "endured retaliation by the named and yet unknown Defendants."[7] (ECF No. 13 at PageID 131.)

The CAC alleges no new or different facts that alter the Screening Order's conclusion. The CAC's generalized allegation of retaliation does not: (a) identify the relevant protected conduct from which Potter's retaliation claim arises; (b) specify the adverse action by Defendants giving rise to Potter's retaliation claim; or (c) demonstrate a causal connection between Potter's purportedly protected conduct and Defendants' adverse action. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The CAC alleges no facts from which the Court may plausibly infer that Potter's "exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

For these reasons, the CAC's allegation of retaliation fails to state a claim to relief, and that claim is DISMISSED WITH PREJUDICE.

---

[7] Under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Potter may not make claims against a universe of unspecified persons who have no notice of claims against them. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). The CAC's claims against "yet unknown Defendants" are DISMISSED WITH PREJUDICE.

4. As to Potter's claim about inappropriate verbal comments, the Screening Order explained that harassment and verbal abuse, no matter how "shameful and utterly unprofessional," do not violate the Eighth Amendment. (ECF No. 5 at PageID 86 (internal citation omitted); *see also id*. at PageID 87 ("Just as the Constitution 'does not mandate comfortable prisons,' *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), it does not mandate polite prison guards or officials").)

The CAC alleges that Abel "made emotionally disturbing comments" during the Transport. (ECF No. 13 at PageID 129 (specifying three examples of Abel's alleged statements).) Potter claims that he suffered "harassment, intentional and negligent infliction of emotional distress and threats by Abel and other as yet unknown Defendants" during the Transport. (*Id*. at PageID 131.) The CAC's repetition of the initial complaint's verbal harassment allegations does not make those claims actionable. Simply because Potter has repeated the same claims twice does not mean he is entitled to an outcome that differs from the Screening Order. Potter cites no intervening U.S. Supreme Court or Sixth Circuit decisions.

As to the CAC's emotional distress allegation, the PLRA bars prisoner suits "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). "[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010). Nothing in the CAC alleges any physical injury to Potter from any Defendant's actions during the Transport, whether *de minimis* or otherwise.

For these reasons, the CAC's allegations of verbal harassment and emotional distress fail to state a claim to relief, and that claim is DISMISSED WITH PREJUDICE.

5. As to Potter's failure to protect claim, the Screening Order concluded that Potter failed to satisfy the Eighth Amendment's objective and subjective prongs. (ECF No. 5 at PageID 93-95 (internal citations omitted).)

The CAC repeats the substance of Potter's initial failure to protect claim. The CAC alleges only that: "[T]he attack occurred [because] … the officers that were assigned to the post where Plaintiff was located were absent from their post. The absence of the officers from their assigned post created a dangerous circumstance … because the aggressor was able to carry and wield a knife against the Plaintiff." (ECF No. 13 at PageID 128.)

The CAC alleges no facts that alter the Screening Order's conclusion. The CAC does not allege that any of the named Defendants knew of and disregarded an excessive risk to Potter's health or safety from the Incident's "aggressor." (*See id*.) The CAC does not allege that Potter and "the aggressor" had a prior history of altercations about which named Defendants were aware. The CAC does not allege that the Defendants should have been aware of the reasonable likelihood of injury or that the "attacker" had, or could have obtained, access to "a knife" on January 27, 2019. (*See id*. at PageID 127.) The CAC also does not allege that any NWCX personnel stood by while the Incident took place. *See Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003).

For these reasons, the CAC's allegation of failure to protect fails to state a claim to relief, and that claim is DISMISSED WITH PREJUDICE.

6. As to Potter's claim for inadequate prison grievance process, the Screening Order explained that prisoners do not have a constitutional right to a prison grievance procedure. (ECF No. 5 at PageID 90 (internal citations omitted).)

9

The CAC alleges that Parker, in concert with Hudle, "took steps to thwart and frustrate Plaintiff's attempts to appeal the summary dismissal of Plaintiff's grievance[,] includ[ing] destroying Plaintiff's grievance." (ECF No. 13 at PageID 131-32.)

The CAC alleges nothing that alters the Screening Order's conclusion. For example, the CAC does not allege any arbitrary denial of Potter's access to NWCX's grievance procedure. Even if a grievance system were constitutionally guaranteed, the CAC does not allege that Parker's or Hudle's conduct in the grievance process directly affected Potter's "ability to bring his claim before any court." *See Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x 866, 874-875 (6th Cir. 2011) (citation omitted).

For these reasons, the CAC's allegation of inadequate prison grievance process fails to state a claim to relief, and that claim is DISMISSED WITH PREJUDICE.

B. **The § 1985 Claim**

The CAC alleges that "the acts and omission" of Parker, Hudle, and Abel "constitute a civil conspiracy to violate and interfere with Plaintiff's civil rights in violation of 18 [sic] U.S.C. § 1985." (ECF No. 13 at PageID 131) Potter's conclusory allegation fails to state a claim to relief.

Forty-two U.S.C. § 1985(2) has two separate clauses. The first clause "forbids a conspiracy to deter a party or witness in a federal court from attending or testifying in court, punishing parties or witnesses for having attended or testified in federal court, or influencing or punishing federal jurors." *Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493, 497 (6th Cir. 2004). That clause does not apply in this case because Potter does not allege that the Defendants tried to prevent or to deter Potter from attending or testifying in federal court. The second clause of § 1985(2) "applies to conspiracies to obstruct the course of justice in state courts." *Bragg v. Madison*, 20 F. App'x 278, 285 (6th Cir. 2001) (citing *Kush v. Rutledge*, 460 U.S. 719, 725 (1983)). That clause

10

does not apply to Potter's claims. The CAC does not allege that the Defendants tried to obstruct justice in state court. Potter does not state a claim under § 1985(2).

Section 1985(3) "applies to conspiracies for the purpose of depriving, directly or indirectly, a person ... of the equal protection of the laws." *Bragg*, 20 F. App'x at 285 (internal citation omitted). To state a claim under § 1985(3), Potter "must show that (1) 'two or more persons ... conspire[d]' (2) 'for the purpose of depriving ... [Potter] of the equal protection of the laws' due to racial or class-based animus and that the conspirators (3) committed an act 'in furtherance of the object of such conspiracy' (4) that 'injured' [Potter]." *See Maxwell v. Dodd*, 662 F.3d 418, 422 (6th Cir. 2011) (quoting 42 U.S.C. § 1985(3)). Claimants under § 1985(3) must allege "both membership in a protected class and discrimination on account of it." *Estate of Smithers v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010) (citing *Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000)); *see also Bragg*, 20 F. App'x at 285 (§ 1985(3) claimants "must demonstrate that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'") (quoting *Kush*, 460 U.S. at 726). The Sixth Circuit "has interpreted § 1985(3) to hold that the class of individuals protected by the 'equal protections of the laws' language of § 1985(3) are those so-called discrete and insular minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics." *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991). Given that "prisoners are not members of a protected class for equal protection purposes," *see McGaughy v. Johnson*, 63 F. App'x 177, 178 (6th Cir. 2003), prisoners are not members of a protected class under § 1985(3). *See Patton v. Shelby Cnty. Sheriff's Dep't*, No. 20-2438, 2021 WL 640833, at *10 (W.D. Tenn. Feb. 18, 2021). The CAC does not allege that Parker, Hudle, and

11

Abel conspired against Potter because of Potter's race or membership in any other protected class. Potter does not state a claim under § 1985(3).

For these reasons, Potter insufficiently alleges an unlawful conspiracy under § 1985. The CAC's § 1985 Claim is DISMISSED WITH PREJUDICE.

## II.     AMENDMENT UNDER THE PLRA

The Court DENIES leave to amend the Consolidated Amended Complaint (ECF Nos. 12 & 13). *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1).

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013)). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

The Court has afforded Potter leave to amend his claims in this case. (*See* ECF Nos. 7 & 9.)  It would be futile to give Potter another opportunity.

## III.    APPELLATE ISSUES

Under Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), the Court must consider whether an appeal by Potter would be taken in good faith. *See Callihan v. Schneider*, 178 F.3d 800, 803–04 (6th Cir. 1999). Under Rule 24(a), if the district court permits a party to proceed *in forma pauperis*, that party may also proceed on appeal *in forma pauperis* without further authorization.  There is an exception when the district court "certifies that the

appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed *in forma pauperis*." Fed. R. App. P. 24(a)(3)(A).  If the district court denies pauper status, the party may move to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)–(5).

The good faith standard is an objective one.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  The test for whether a party appeals in good faith is whether the litigant seeks appellate review of any issue that is not frivolous.  *Id.*  "It would be inconsistent for a court to determine that a complaint should be dismissed prior to service on Defendants but has sufficient merit to support an appeal *in forma pauperis*."  *DePriest v. Prestress Servs., Inc.*, No. 13-2768-JDT-cgc, 2014 WL 1269933, at *1 (W.D. Tenn. Mar. 27, 2014) (citing *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983)).  For the same reasons the Court dismisses Potter's Consolidated Amended Complaint for failure to state a claim, the Court finds that an appeal would not be taken in good faith.  The Court therefore CERTIFIES, under Federal Rule of Appellate Procedure 24(a), that any appeal by Potter would not be taken in good faith.  The Court DENIES leave to proceed on appeal *in forma pauperis*.  If Potter appeals, he must pay the full $505 appellate filing fee or move for leave to appeal *in forma pauperis* with a supporting affidavit in the Sixth Circuit.  *See* Fed. R. App. P. 24(a)(5).

### IV. NOTICE OF STRIKE RECOMMENDATION

The "three strikes" provision of 28 U.S.C. § 1915(g) prevents a court from granting *in forma pauperis* status to a prisoner who "has, on 3 or more prior occasions, while incarcerated ... brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(g).  For § 1915(g) analysis of Potter's future filings, if any, the Court recommends that the

dismissal of this case be treated as a strike pursuant to § 1915(g).  *See Simons v. Washington*, No. 20-1406, 2021 WL 1727619, at *1 (6th Cir. May 3, 2021).

## V. CONCLUSION

For the reasons explained above:

(1) The Consolidated Amended Complaint (ECF Nos. 12 & 13) is DISMISSED WITH PREJUDICE for failure to state a claim on which relief can be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1)-(2).  The CAC's requests for service of process upon Defendants and for a jury trial, *see* ECF No. 13 at PageID 133, are DENIED as moot;

(2) Leave to amend is DENIED;

(3) The Pending Motions (ECF Nos. 15, 16 & 17) are DENIED as moot;

(4) The Court recommends that the dismissal of this case be treated as a strike pursuant to 28 U.S.C. § 1915(g).  *See Simons*, 2021 WL 1727619, at *1;

(5) This case is DISMISSED in its entirety;

(6) The Court CERTIFIES that an appeal would not be taken in good faith; and

(7) The Court DENIES leave for Potter to proceed *in forma pauperis* on appeal.

IT IS SO ORDERED this 2d day of March, 2022.

                                           /s/ Samuel H. Mays, Jr.
                                           SAMUEL H. MAYS, JR.
                                           UNITED STATES DISTRICT JUDGE